UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIMOTHY L. CARVER** | * Civil Action No. **21-281** |
| | * |
| **VERSUS** | * Judge _____ |
| | * |
| **CAPITAL AREA TRANSIT SYSTEM** | * Mag. Judge _____ |
| | * |

**COMPLAINT FOR FLSA, BREACH OF CONTRACT AND WAGE PAYMENT ACT**

NOW INTO COURT, through undersigned counsel, comes petitioner, **TIMOTHY L. CARVER,** who files this Complaint for a FLSA violation, breach of contract, and the violation of the Louisiana Wage Payment Act. He represents the following:

1.

Plaintiff Timothy L. Carver is a person of the full age of majority and, at the times of the incidents described in this Petition, domiciled in Baton Rouge, Louisiana. Defendant likely treated other employees illegally like it did Plaintiff; discovery will assist finding others to join this action.

2.

Made defendant herein is CAPITAL AREA TRANSIT SYSTEM (CATS), a business that provides bus service in Baton Rouge, Louisiana and has its principal place of business in this judicial district. CATS is a political subdivision of the State of Louisiana governed by a Board of Commissioners

appointed by the Baton Rouge Metro Council.

3.

Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims involve federal questions arising from FLSA violations. Supplemental jurisdiction under 28 U.S.C. §1367 is appropriate for Plaintiffs' state law claims because these state claims are so closely related to the federal claims that they form part of the same case or controversy.

4.

Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's business was in the Middle District of Louisiana and, pursuant to 28 U.S.C. § 1391(b)(2), Plaintiff's claims arose out of events and omissions of which a substantial part occurred in that district. Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

5.

Defendant CATS is a public agency as that term is defined in 29 U.S.C. §203(x) and an employer as that term is defined in 29 U.S.C. §203(d).

6.

At all relevant times CATS has been engaged in the business of providing local bus service in Baton Rouge and Baker. Its activities were related and performed through

unified operation and common control for a common business purpose. As such, CATS is an enterprise as that term is defined in 29 U.S.C. §203(r).

7.

At all relevant times, CATS utilized the instrumentalities of interstate commerce and regularly purchased substantial quantities of fuel, parts, equipment and other goods from sources outside the State of Louisiana. CATS regularly transported substantial numbers of passengers to and from air, ship, and bus terminals where such passengers continue, begin, or end interstate and foreign travel. As a result of the above activities and others, CATS is an enterprise engaged in commerce or in the production of goods for commerce as those terms are defined in 29 U.S.C. §209(s).

8.

At all relevant times herein, Timothy Carver was employed by CATS as a trainee for a bus-driver position. As such, he was engaged in ancillary activities closely and intimately tied to, and necessary for, the business of operating CATS bus services. In performing his job for CATS, Carver was employee engaged in commerce or engaged in the production of goods for commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce as those terms are defined in 29 U.S.C. §§203(b), (e), (i), (j), (r), and (s).

**Background**
9.

CATS hired Petitioner on February 17, 2020 and placed him in its bus-driver training program.

10.

CATS required its trainees to sign a contract that required employee to reimburse CATS' training costs if trainee left CATS during his first year of employment. See Ex. 1.

11.

Mr. Carver was the first in his class to finish a driving test, he had learned pre-trip and route training, and had successfully completed his training.

12.

CATS told him that is as far as they will go with its training and fired him on July 9, 2020.

13.

Mr. Carver's last paycheck was for $0.00 despite working 32.25 hours.   Ex. 2.

14.

CATS deducted state and federal taxes and a miscellaneous fee from the $473 Carver earned.  Ex. 2.  The miscellaneous fee was equal to what would have been Carver's take-home pay.  CATS contended Carver's take-home pay was $0.00.  Ex. 2.

15.

The miscellaneous fee was for some of CATS' training costs spent on Carver.  Ex. 2.

16.

Carver's final paycheck and Carver's agreement with CATS show that it deducted training costs ($398.19) from Carver's pay because, according to their agreement, any employee that "leaves the Agency prior to their first (1st) year service anniversary, will have the training deducted from their final paycheck, not to exceed $500.00". Ex. 1.

17.

Carver had, however, completed his training.

18.

Another reason indicating the miscellaneous fee was for training costs is that CATS officials told Carver and its employees that if the employee **quit** before a year of employment, CATS would deduct up to $500 training costs from the employee's last paycheck (the contract stated for any reason the employee did not complete year of service, training fee would be deducted).

19.

A co-worker fired from CATS, too, had training costs (for her, $500) deducted from her last paycheck; and Mr. Carver had no money advance or other expenses that could have accounted for the miscellaneous-fee deduction.

20.

CATS deducted FICA-Medicare-Louisiana taxes of $41.80 and a 401(a) benefit of

$33.12 from Carver's wages in his last week there.  CATS paid him after deducting training costs, therefore, $74.92 for his last week in return for 32.25 hours of work.  CATS paid Carver $2.32 per hour for Carver's work in his last pay period at CATS.

21.

Soon after Mr. Carver received his paycheck stub showing take-home pay of $0.00, Carver tried several times to contact CATS payroll and training officials regarding his unpaid wages.  They would not speak with him about it.  On February 8, 2021, he asked by certified mail, through his attorney, that CATS pay him the $398.19 due.  Ex. 3.  CATS received but never responded to the letter.  Ex. 4.

22.

Although its true that Carver left CATS employment prior to having served one year of employment there, it was only because CATS fired him and through no fault of Carver's.  Under the law, Carver met and did not breach their CATS agreement requiring Carver's employment there for one year.  Civil Code article 1772 states that "[a] *condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment*".  Carver had not met agreement's condition of a year of employment because of the fault of a party with an interest contrary to its fulfillment—CATS.  CATS' interest contrary to its fulfillment was that by preventing Carver from meeting his obligation it profited in not paying Carver his wages.

23.

Furthermore, Louisiana law bars employers from deducting training costs from employees' wages:

> No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This Section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, but in such cases the fines shall not exceed the actual damage done.

La. R.S. 23:635.

24.

Louisiana law bars contracts requiring employee to forfeit wages at termination:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

La. R.S. 23:634

25.

Louisiana courts have held that once the employee has worked for wages promised, his wages have vested. Once vested, employer cannot require employee's presence at some future date to pay employee's wages. To make such a requirement violates the anti-forfeiture provisions of La. R.S. 23:634 and is against Louisiana public policy. *Morse v. J. Ray McDermott & Co., Inc.*, 344 So.2d 1353, 1368 (La. 1976).

26.

CATS' requirement Mr. Carver be present at work at a future date to be paid was illegal.  Even if it had not been illegal, CATS prevented him from completing his year of service required by contract for him to be paid, therefore, CATS breached its contract with Carver.

### Cause of Action: Violation of FLSA's Minimum Wage Requirement

27.

CATS violated 29 U.S.C. §206(a)(1)(C) by employing Carver and refusing to pay him a wage at least $7.25 an hour in Carver's last week there.  Accordingly, compensation is due and owing to Carver.

28.

CATS knew, or should have known, that Carver was covered by the provisions of the act.

29.

CATS willfully violated the Act by failing to compensate Carver at the minimum wage for the 32.25 hours he worked in his last week at CATS.  It instead used his wages to pay FICA/Medicare/Louisiana taxes of $41.80 and a 401(a) benefit of $33.12.  CATS paid him $74.92 for his last week of 32.25 hours.  CATS paid Carver $2.32 per hour for his last pay period; an amount less than FLSA's required minimum wage.

30.

Although Mr. Carver was in training, he was an employee as defined by the FLSA. CATS, Carver, and trainees understood that trainees were entitled to and were paid wages for training. Ex. 2; *Atkins v. Gen. Motors Corp.,* 701 F.2d 1124, 1127-28 (5th Cir. 1983). Two, CATS' training provided benefit to CATS when across a two-week period Carver and other trainees washed buses. Three, trainees were trainees for a a 90-day probationary period upon which trainee became a regular employee with pension benefits. Carver completed the 90-day probationary period. Carver was earning the 401(a) benefit when CATS fired him. Ex. 2.

## Cause of Action: Breach of Contract

31.

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. Civ. Code art. 1906.

32.

An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance. La. Civ. Code art. 1994.

33.

CATS breached its contract with Mr. Timothy Carver through its nonperformance when it refused to pay him wages promised in its agreement with him.

34.

The Louisiana Supreme Court has found actions, like those by CATS contractually void, against public policy, and violate the Wage Payment Act:

> A supplemental cause or motive, see C.C. art. 1896, of the employing company in the contract was to induce the employee, for the benefit of the company, to continue his employment with the company. Plaintiff in this latter respect has performed and was ready and willing to continue his employment with the company. The plan's forfeiture clause therefore is manifestly unjust, contrary to public order and public policy, and unenforceable where sought to be applied in a circumstance where, as here, by unilateral act of the employer, the employee is prevented from performing his part of the bargain, i.e., to remain in service to the date on which the delayed portions are payable. The public policy which we here enforce is evident in the prohibition against wage forfeiture under our law, R.S. 23:634, especially as interpreted in light of the general principle that an obligor, where his obligation is contingent upon fulfillment of a specified condition, cannot defeat that obligation by preventing accomplishment of the condition. C.C. art. 2040 [today's art. 1772].

*Morse,* 344 So.2d at 1368 (La. 1976). *See Williams v. Dolgencorp, Inc.,* 2004-139 (La. App. 3 Cir. 9/29/04); 888 So.2d 260; *Messina v. Lowe's Home Centers, Inc.,* 07-1214, 2007 WL 1870170 (E.D. La. 6/26/2007).

**Cause of Action:  Louisiana Wage Payment Act**

35.

Louisiana law requires employers pay employees unpaid wages. La. R.S. 23:631-634. CATS has failed to pay Mr. Carver his wages due.

36.

Under the Louisiana Wage Payment Act, a court can impose a penalty against an employer when the employer did not act in good faith in refusing to pay its employee's wages (La. R.S. 23:632(B)).

37.

As described above in paragraphs 9-11, and 16, CATS arguments are contrary to contract law, the Louisiana Wage Payment Act, and public policy.  When notified by Carver's attorney of CATS' failure to pay its employee wages, CATS ignored Carver's demand for wages.  CATS reasons for refusing to pay Carver are so unfair and contrary to well-established law that clearly CATS did not act in good faith with its bus driver, Timothy Carver.

38.

Carver had worked full time at CATS and was earning $14.67 per hour.

39.

Should the court deem this suit well-founded, Plaintiff seeks unpaid wages ($398.19), court costs, attorney fees, declaratory judgment, and a penalty worth an equivalent of 90 days of Carver's wages (90 days X $117.36 = $10,562.00).  The declaratory judgment will help ensure that CATS employees will not be subjected to similar practices in the future.

**WHEREFORE,** Plaintiff Timothy Carver prays that there be judgment in his favor and against Defendant Capital Area Transit Service (CATS) for its FLSA violation, breach of contract, and violation of the Louisiana Wage Payment Act; that the Court award Mr. Carver unpaid wages, FLSA liquidated damages, penalty, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, a

declaratory judgment finding CATS' training deductions illegal under state and federal law, and all such other relief to which Mr. Carver is entitled at law or in equity.

Respectfully submitted,

**BELL LAW FIRM, LLC**

 / s/ *Paul F. Bell*
Paul F. Bell, La. Bar Roll No. 30391
4949 Tulane Drive
Baton Rouge, LA  70808
Tel.  225-284-3235
Fax 888-812-7933    bz9@cox.net
*Attorney for Plaintiff Timothy L. Carver*

### SERVICE INFORMATION

Plaintiff mailed this day, May 17, 2021 by USPS certified mail *Notice of Lawsuit and Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's **Mr. Bill Deville,** Chief Executive Officer at CATS administrative offices, 350 North Donmoor Avenue; Baton Rouge, LA  70806.  Plaintiff also filed with the Court an unsigned summons.

       /s/ *Paul F. Bell*