**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TIMOTHY L. CARVER**                                    **CIVIL ACTION**

**VERSUS**                                                         **NO.  21-281-RLB**

**CAPITAL AREA TRANSIT SYSTEM**                **CONSENT CASE**

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. (R. Doc. 22). The deadline for filing an opposition has expired. LR 7(f). Accordingly, the motion is unopposed.

For the following reasons, the Court will grant Plaintiff's Motion for Summary Judgment.

## I.    Background

On May 17, 2021, Timothy L. Carver ("Plaintiff") commenced this action against his former employer Capital Area Transit System ("Defendant" or "CATS"), alleging violation of the minimum wage requirement of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a)(1)(C), violation of the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631-634, and breach of their employment contract. (R. Doc. 1, "Complaint"). Plaintiff asserts that there is federal subject matter jurisdiction under 28 U.S.C. § 1331 in light of Plaintiff's FLSA claim, and that the Court may properly exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367. (Complaint ¶ 3).

Plaintiff alleges that he was hired by CATS into their bus driver training program on February 17, 2020, successful completed his training, and was then fired on July 9, 2020. (Complaint ¶¶ 9-12). Plaintiff asserts that CATS wrongly deducted $389.19 in training costs from Plaintiff's final paycheck in accordance with an employment agreement, which allowed for the deduction of up to $500.00 in training costs from a final paycheck where the employee leaves

CATS before reaching one year of employment. (Complaint ¶¶ 13-18). Plaintiff asserts that he was fired at no fault of his own, prior to the close of the one year period and, accordingly, was prevented by CATS from meeting the required one year of employment. (Complaint ¶ 22). Plaintiff seeks recovery for violation of the LWPA, for breach of contract, and for violation of the minimum wage requirements under the FLSA, seeking recovery of $398.19 in unpaid wages, court costs, attorney fees, declaratory judgment, and a penalty with an equivalent of 90 days wages ($10,562.00). (Complaint ¶¶ 22-39).

CATS filed an Answer. (R. Doc. 11, "Answer").[1] In the Answer, CATS admits that it is an "enterprise," "public agency," and "employer" as defined by the FLSA. (Answer, ¶¶ 5-6; Complaint, ¶¶ 5-6). CATS further admits that while Plaintiff was in training, he was an "employee" as defined by the FLSA. (Answer ¶ 30). CATS further admits that Plaintiff's "last paycheck was for $0.00" despite working 32.25 hours after deduction of taxes and a miscellaneous fee for training costs in the amount of $398.19. (Answer, ¶¶ 13-16; Complaint, ¶¶ 13-16). CATS specifically admits that it violated the minimum wage requirements of the FLSA: "CATS violated 29 U.S.C. §206(a)(1)(C) by employing [Plaintiff] and refusing to pay him a wage at least $7.25 an hour in [Plaintiff's] last week there. Accordingly, compensation is due and owing to [Plaintiff]." (Answer, ¶ 27; Complaint, ¶ 27).

On November 8, 2021, Plaintiff filed a Motion to Compel indicating that CATS failed to respond to requests for admissions, interrogatories, and requests for production served on September 20, 2021. (R. Doc. 17). CATS did not file any opposition to the Motion to Compel.

On November 10, 2021, the district judge referred the instant action to the undersigned in light of the consent of the parties accordance with 28 U.S.C. § 636(c). (R. Docs. 14, 19).

---

[1] The Clerk of Court had entered default when CATS did not timely file an answer or responsive pleading after service. (R. Doc. 10). The Court withdrew the entry of default after the Answer was filed. (R. Doc. 13).

On December 1, 2021, the Court granted Plaintiff's Motion to Compel in part, ordered CATS to provide responses to the interrogatories and requests for production, and noted that because Rule 36 is self-executing, the requests for admissions are deemed admitted. (R. Doc. 20). CATS did not subsequently file any motion to withdraw or amend these deemed admissions:

> 1.      CATS understood or should have understood that trainees in the CATS training program that started in February 2020 were entitled to wages for the time spent participating in the CATS training program.

> 2.      While [Plaintiff] was employed at CATS, trainee [Plaintiff] and his co-trainees were employees as defined under the FLSA and subject to FLSA regulations as to minimum wage.

(R. Doc. 17-2 at 1).

On February 21, 2022, Plaintiff filed the instant Motion for Summary Judgment. (R. Doc. 22). Plaintiff moves for summary judgment "on his claims – an unpaid wage claim (La. R.S. 23:631) and a FLSA minimum-wage claim (29 U.S.C. § 206)." (R. Doc. 22).[2] Under Local Rule 7(f), CATS had 21 days from service of the motion to file any opposition. CATS has not filed an opposition as of the date of this ruling. Furthermore, the deadline to complete non-expert discovery in this action has expired. (R. Doc. 16).

## II.    Law and Analysis

### A.    Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with

---

[2] Plaintiff does not separately seek summary judgment on his third cause of action: breach of contract. (Complaint ¶¶ 31-34). As discussed below, any awardable damages for breach of contract have been recovered in light of the award of unpaid wages under the FLSA and LWPA.

"specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

A moving party must support an assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56 details the requirements for statements of material facts. "A motion for summary judgment shall be supported by a separate, short, concise statement of material facts, each set forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." LR 56(b)(1). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." LR 56(f).

**B.    The Undisputed Material Facts**

The Court has reviewed Plaintiff's Statement of Material Facts submitted in support of summary judgment in accordance with Federal Rule 56(c)(1)(A) and Local Rule 56(b)(1). (R. Doc. 22-2). The Court has also reviewed the following exhibits submitted in support of Plaintiff's Motion for Summary Judgment and Statement of Material Facts: Plaintiff's Affidavit executed on February 14, 2022 (R. Doc. 22-3, Ex. 1); the CATS Commercial Driver's License Training agreement executed on February 18 2020 (R. Doc. 22-4, Ex. 2); Plaintiff's final pay stub for the pay period July 5, 2020 to July 18, 2020 (R. Doc. 22-5, Ex. 3); the CATS form indicating Plaintiff was terminated by CATS on July 10, 2020 (R. Doc. 22-6, Ex. 4); the Complaint and Answer (R. Doc. 22-7, Ex. 5a-5b); the February 8, 2021 letter from Plaintiff's counsel demanding $398.19 from CATS (R. Doc. 22-8, Ex. 6); the February 8, 2021 delivery confirmation letter confirming delivery of the demand letter (R. Doc. 22-9, Ex. 7); Plaintiff's requests for admission, interrogatories, and requests for production served on September 20, 2021 (R. Doc. 22-10, Ex. 8); and Plaintiff's counsel's Declaration providing the billed attorney time in this matter (R. Doc. 22-11, Ex. 9).

As there is no opposition to the instant Motion for Summary Judgment, or Opposing Statement of Material Facts submitted under Local Rule 56(c), the Court concludes that the facts contained in Plaintiff's Statement of Facts are admitted for the purposes of determining whether summary judgment is appropriate. *See* Fed. R. Civ. P. 56(e); Local Rule 56(f)-(g).

The following facts, which are derived from Plaintiff's Statement of Facts and the Plaintiff's summary judgment evidence, are undisputed:

CATS employed Plaintiff from February 17, 2020 to July 9, 2020. (Ex. 1, ¶ 2; Ex. 3; Ex. 4). The parties agreed that if Plaintiff "leaves the Agency prior to their first (1st) year service

anniversary, [Plaintiff] will have the training deducted from [his] final payment, not to exceed $500.00." (Ex. 2). The document references a union agreement. (Ex. 2).

CATS paid Plaintiff in his last week of work $14.67 per hour for 32.25 hours of work totaling $473.11. CATS deducted $398.19 in training costs, withheld $41.90 in taxes, and contributed $33.12 in a 401(a) plan, leaving a balance of $0 for the final paycheck. (Ex. 3; Answer ¶¶ 13-16, 27; Complaint ¶¶ 13-16, 27).

Prior to filing this lawsuit, on February 8, 2021, Plaintiff's counsel demanded from CATS unpaid wages measured by the $398.19 in deducted training costs. (Ex. 6; Ex. 7).

There is no dispute that CATS is an "enterprise" as defined in 29 U.S.C. § 203(r), CATS is a "public agency" as defined in 29 U.S.C. § 203(x), and CATS is an "employer" as defined in 29 U.S.C. § 203(d). (Answer ¶¶ 5-6; Complaint ¶¶ 5-6). There is also no dispute that during his employment with CATS, Plaintiff was an "employee" as defined in 29 U.S.C. § 203(e). (Ex. 8, deemed admission).

Finally, Defendant does not submit any arguments or evidence disputing that CATS owes Plaintiff unpaid wages in the amount of $398.19, penalties in the amount of $10,562.00, and attorney's fees in the amount of $14,400.00, for a total amount of $25,360.00. (Ex. 2; Ex. 3; Ex. 9; Answer ¶ 27; Complaint ¶ 27).

### C.    The FLSA Claim

"An employer violates the FLSA if it fails to pay covered employees a minimum wage of $7.25 per hour or fails to pay covered employees at least one and one-half times their normal rate for hours worked in excess of 40 hours per week." *Knaps v. Quality Refractory Serv., Inc.*, No. 19-13419, 2021 WL 125932, at *2 (E.D. La. Jan. 13, 2021) (citing 29 U.S.C. §§ 206, 207). "In order to state a claim for unpaid overtime or minimum wages under the FLSA, a plaintiff must

plead: '(1) that there existed an employer-employee relationship during the unpaid . . . periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime [or minimum] wage requirements; and (4) the amount of overtime [or minimum wage] compensation due.'" *Knaps*, 2021 WL 125932, at *2 (quoting *Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)).

Here, there is no dispute that CATS employed Plaintiff as its employee under the FLSA during the unpaid periods claim, from January 5, 2020 through July 9, 2020. (*See* R. Doc. 22-5) (pay stub for pay period from July 5, 2020 to July 18, 2020). CATS admits that while Plaintiff was in training, he was an "employee" as defined by the FLSA. (Answer ¶ 30) There is also no dispute that CATS is an "enterprise," "public agency," and "employer" as defined by the FLSA. (Answer, ¶¶ 5-6; Complaint ¶¶ 5-6). CATS further admitted that Plaintiff's "last paycheck was for $0.00 despite working 32.25 hours after deduction of taxes and a miscellaneous fee for training costs in the amount of $398.19. (Answer, ¶¶ 13-16; Complaint ¶¶ 13-16). Finally, CATS even admitted that it has violated the minimum wage requirement under 29 U.S.C. §206(a)(1)(C) and that it owes Plaintiff compensation for violation of this requirement. (Answer, ¶ 27; Complaint ¶ 27).

The minimum wage requirement must normally be paid "free and clear." *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973) (citing 29 C.F.R. § 531.35) ("Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or another person for the employer's benefit the whole or part of the wage delivered to the employee."). There are three exceptions where

paycheck deductions are allowed to reduce payments below the statutory minimum wage. *See Brennan v. Heard*, 491 F.2d 1, 3 n.2 (5th Cir. 1974) (citing *Veterans Cleaning*, 482 F.2d 1369). First, there is the statutory exception providing that "the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees" constitute wages. *See Veterans Cleaning*, 482 F.2d at 1369 (quoting 29 U.S.C. § 203(m)). Accordingly, deductions for board, lodging, or other facilities are allowed because they constitute actual wages, though not paid in actual currency. Second, there is a judicially recognized exception that "repayment to the employer of amounts misappropriated by the employee may be made by means of paycheck deductions, even where they reduce the net pay to the employee below minimum wage." *Veterans Cleaning*, 482 F.2d at 1369 (citation omitted). "In such cases the employee has actually taken the money free and clear and had the use of it." *Id*. Third, courts have allowed "repayment by paycheck deductions of free and clear advances to employees," including "directions to pay third-party creditors of the employee at the employee's direction and with his consent, or to recoup such amounts already paid out, when the employee has consented to the arrangement." *Id*.

While the first two exceptions clearly do not apply to the training repayment program at issue, there is an argument to be made that deduction of agreed-upon training costs are allowed under the third exception described above. Plaintiff does not cite any decisions specifically addressing this issue.[3] While it appears that the Fifth Circuit has not addressed this issue, federal

---

[3] With respect to this issue, Plaintiff cites a district court decision for the proposition that "The Fifth Circuit has held that 'payroll deductions to compensate for debts owed by an employee to his employer were impermissible if they operated to reduce income below the wage floor prescribed by the FLSA.'" (R. Doc. 22-1 at 13) (quoting *Fazeli v. Saleh*, No. 3:16-749, 2018 WL 4539093, at *6 (N.D. Tex. Sept. 21, 2018) (quoting *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974), *overruled on other grounds by McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 130-31 (1988)). Plaintiff does not inform the Court that *Heard* actually cited *Veterans Cleaning* for this proposition. At any rate, the *Fazeli*, *Heard*, and *Veterans Cleaning* decisions did not specifically address training repayment programs. The

courts have held that seeking repayment of "training costs" from an employee otherwise paid above minimum wage does not result in an impermissible "kick-back" payment as described in 29 C.F.R. § 531.35. *See*, *e.g.*, *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010). That said, an employer cannot deduct such "training costs" to the extent the deduction reduces wages below minimum wage. *See Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777, 789 (7th Cir. 2002) (noting that while the employer may seek costs under training repayment provision, it must pay at least the statutory minimum wage and "collect any residue as an ordinary creditor"); *Gordon*, 627 F.3d at 1096 (noting that defendant "could collect the training costs as an ordinary creditor" as long as it paid the plaintiffs "at least the statutory minimum wage"); *see also Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 390-91 (D. Mass. 2019) (long-haul truck drivers were trainees (and not employees while obtaining their commercial drivers' licenses; employers could not deduct "training fee" or "tuition" from final paychecks if they did not complete the ten-month employment term to the extent it reduced pay below minimum wage) (citing *Gordon*, 627 F.3d at 1093 n.1 and *Heder*, 295 F.3d at 778-79, 782-83)).

In the absence of any argument holding otherwise, and given CATS' admissions, the Court finds that CATS violated the statutory minimum wage to the extent it deducted training costs that reduced Plaintiff's pay below the statutory minimum wage.

For this violation, Plaintiff is entitled to recover "the amount of [his] unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiff asserts that he "earned $74.92 for [his final] week but should have received $233.81 ($7.25 X 32.25 hours)," and, accordingly, CATS owes him $158.89 ($233.81 minus $74.92)[4] in

---

*Fazeli* and *Veterans Cleaning* decisions addressed the issue of whether deductions seeking to recoup costs related to vehicles damaged during the course of employment were allowed. The *Heard* decision addressed an improper setoff to FLSA wages awarded in litigation.
[4] The $74.92 in earnings is the total withheld taxes ($41.80) plus the total 401(a) contribution ($33.12).

unpaid minimum wages. (R. Doc. 22-1 at 14). The Court finds this calculation to be correct and supported by the evidence. As required by statute, the Court will also award an equivalent amount of $158.89 in liquidated damages.[5]

In sum, Plaintiff is entitled to recovery of **$158.89** in unpaid minimum wages, **$158.89** in liquidated damages, and attorney's fees to be calculated below.

### D.    The LWPA Claim

"The main purpose of the [LWPA] is to compel an employer to pay the earned wages of an employee promptly after his dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers." *Slaughter v. Bd. of Supervisors of S. Univ. and Agric. and Mech. College*, 76 So. 3d 438, 446 (La. Ct. App. 1st Cir. 2011). "Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first." La R.S. 23:631(A)(1)(b); *see Becht v. Morgan Building & Spas, Inc.*, 843 So. 2d 1109, 1111 (La. 2003) (noting that the LWPA "creates liability for an employer who fails to timely pay wages owed to an employee after the employee voluntarily [or involuntarily] leaves employment"). To state a claim for unpaid wages under the LWPA, an employee must allege (1) that the defendant was his employer; (2) that the employee/employer relationship ceased to exist; (3) that at the time the employee/employer relationship ended he was owed wages; and (4) that the defendant failed to submit the owed wages within the fifteen days

---

[5] Defendant has not demonstrated that its "actions were in good faith and that it had a reasonable ground for believing that its act or omission was not a violation of the FLSA," which would provide the Court discretion to not awarding liquidated damages. 29 U.S.C. § 260.

required under the statute. *Dillon v. Toys R Us-Delaware Corp.*, No. 2016-0983, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017).

Here, there is no dispute that CATS violated La. R.S. 23:631. As discussed above, there is no dispute that CATS employed Plaintiff, that CATS terminated the employment relationship, that CATS deducted $398.19 in training costs from Plaintiff's last paycheck, and that CATS failed to pay the $398.19 in deducted training costs within the fifteen days required under the statute.

These deducted training costs are unpaid wages for the purposes of the LWPA. Louisiana law prohibits contracts providing that employees forfeit certain wages before the contract is completed:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

La. R.S. 23:634(A). The CATS Commercial Driver's License Training agreement providing that CATS may deduct training costs, not to exceed $500.00, from a final paycheck if an employee leaves CATS prior to completing one year of employment (R. Doc. 22-4, Ex. 2) is null and void as a matter of Louisiana public policy.[6] *See Gallo v. Greenpath Int'l, Inc.*, No. 2021- 0313, 2021 WL 5979073, at *5-7 (La. Ct. App. 4th Cir. Dec. 16, 2021) (reimbursement of training costs provision in employment contract was a de facto forfeiture of wages clause in contravention with

---

[6] Given that the agreement is null and void as opposed to public policy, the Court will dismiss Plaintiff's separate cause of action for breach of contract. Plaintiff will be restored to his pre-contractual position in light of the award of unpaid wages provided under the FLSA and LWPA. *See* La. C.C. art. 2033 ("An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.").

La. R.S. 23:634 and against public policy even where contract was for a specified two-year term); *Leprette v. RCS, LLC*, 206 So.3d 1215, 1218-19 (La. Ct. App. 3rd Cir. 2016) (loan agreement requiring reimbursement for training expenses if employment is terminated for any reason before working a six-month period following completion of training is null and void as against Louisiana public policy); *Newsom v. Global Data Systems, Inc.*, 107 So.3d 781 (La. Ct. App. 3rd Cir. 2012) (employment contract provision requiring employees to reimburse their employer for education and training expenses after separation is void as against Louisiana public policy).[7] The Court concludes that CATS improperly withheld Plaintiff's training costs from the his final paycheck.

Plaintiff is entitled to recover the $398.19 in deducted training costs as they are unpaid wages in violation of the LWPA. The Court will, however, deduct from this amount the $158.89 in recoverable unpaid minimum wages under the FLSA, reducing the recoverable unpaid wages under the LWPA to $239.30. *See Bonich v. NAS Component Maint., Inc.*, No. 20-21582, 2020 WL 3000187, at *3 (S.D. Fla. June 4, 2020) (citing cases for proposition that it is well established that a plaintiff cannot recover unpaid federal minimum wages under both federal and state law, but can recover unpaid wages in excess of the federal minimum wages). Accordingly, the Court will award **$239.30** in additional unpaid wages under the LWPA, which is supported by the evidence.

In addition to unpaid wages, the LWPA allows for the recovery of penalty wages and attorney's fees for a violation of La R.S. 22:631:

A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of [La.] R.S. 23:631 shall be liable to the

---

[7] Even if the training-deduction policy is part of a collective bargaining agreement, "apprenticeship and training" are "considered and treated as wages due by employers under [La.] R.S. 23:631-23:639." La R.S. 23:640. "Even those employed under a collective bargaining agreement are protected" by La. R.S. 23:631 and La. R.S. 23:632. *Preis, PLC v. Daily*, 297 So. 3d 853, 866 (La. App. 3rd Cir. 2020) (citing La. R.S. 23:640).

employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

B. When the court finds that an employee's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

La. R.S. 23:632. "In order to recover penalty wages and attorney's fees under La. R.S. 23:632, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Becht*, 843 So. 2d at 1111. A suit is well-founded if the court finds that the employer owed the employee unpaid wages. *Knight v. Tucker*, 210 So.3d 407, 420 (La. App. Ct. 2d Cir. 2016).

Here, there is no dispute that all of the elements for recovery of penalty wages and attorney's fees have been satisfied. An employer can avoid penalties if it can show that it acted in good faith in not paying the employee his earned wages. *Batiansila v. Advanced Cardiovascular Sys., Inc.*, 952 F.2d 893 (5th Cir. 1992) (interpreting Louisiana law). CATS has made no attempt to make such a showing. Furthermore, CATS does not have a good faith defense against the penalties given that its acts are against public policy in light of the unlawful training reimbursement provision. *See Leprette*, 206 So.3d at 1220. Having considered the applicable law, the Court finds no good faith excuse for CATS' failure to pay Plaintiff's wages upon demand.

Plaintiff seeks recovery of $10,562.00 in penalty damages under La. R.S. 22:631(A). The LWPA penalty is the lesser of 90 days of wages at the employee's daily rate of pay or full wages from the time of demand until payment of the unpaid wages. La. R.S. 22:631(A). It has been more than 90 days since Plaintiff made a demand for unpaid wages on February 8, 2021. (R. Doc. 22-8, Ex. 6). Accordingly, the Court will award the lesser amount of 90 days of wages at Plaintiff's daily rate of pay.

Plaintiff has presented evidence that, at the time of termination, he was paid $14.67 per hour. There is no dispute that Plaintiff was employed full-time at the time of his discharge. (R. Doc. 22-6). Accordingly, the Court will calculate the statutory penalty award, when rounded to the nearest dollar, as **$10,562.00** (90 days X 8 hours/day X $14.67 per hour).

### E.    Calculation of Reasonable Attorney's Fees

Plaintiff seeks recovery of $14,400.00 in attorney's fees under 29 U.S.C. § 216(b) and La. R.S. 23:632(C). The Court concludes that Plaintiff is entitled to recovery reasonable attorney's fees under both federal and state law at a lesser amount than sought.[8]

The "lodestar" calculation is the "most useful starting point" for determining the award for attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Clark v. Stat Care Clinics, L.L.C.*, No. 17-00306, 2018 WL 11319416, at *3-4 (M.D. La. July 9, 2018) (applying "lodestar" method to calculation of attorney's fees under the LWPA). The lodestar calculation involves multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate based on the market for that work in the community. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012); *Forbush v. J.C. Penny Co.,* 98 F.3d 817, 821 (5th Cir. 1996).

---

[8] Given that the Court is awarding attorney's fees under both the FLSA and LWPA, the Court need not distinguish, in reviewing the sought hours of attorney work, what time was spent with respect to either statute.

Once the district court determines the lodestar, "[t]he district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)." *Forbush*, 98 F.3d at 821. The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent;[9] 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

### 1.    Reasonable Hourly Rate

The first step in ascertaining the lodestar is determining counsel's reasonable hourly rate. This rate is the market rate for similar services by similarly trained and experienced attorneys in the relevant legal community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The relevant legal community is generally the judicial district in which the litigation occurred, here, the Middle District of Louisiana. *See Comar Marine Corp. v. Raider Marine Logistics, LLC*, No. 09-1438, 2016 WL 99208, at *4 (W.D. La. Jan. 7, 2016). "An attorney's requested hourly rate is *prima facie* reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Pickney v. Strategic Restaurant Acquisition Co., LLC*, No. 16-0211, 2017 WL 1821125, at *2 (W.D. La. May 4, 2017) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.

---

[9] The Supreme Court has barred consideration of the *Johnson* factor pertaining to whether the fee was fixed or contingent. *See City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992).

1995)). The reasonable hourly rate for a particular community may be established based on the affidavits of other attorneys practicing there. *Id.* (citing *Thompson v. Connick*, 553 F.3d 836, 867-68 (5th Cir. 2008)). "[A] district court 'is itself an expert' on the issue of fees and 'may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.' " *Winget v. Corp. Green, LLC*, No. 09-0229, 2011 WL 2173840, at *6 (M.D. La. May 31, 2011) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

The Court concludes that the hourly rate of $250 for Paul F. Bell, an attorney with 15 years of experience in employment litigation, is reasonable. CATS has not submitted any arguments in support of a finding that the hourly rate for Plaintiff's counsel is unreasonable. Furthermore, decisions from this district indicate that Plaintiff's counsel's rate is within the range of prevailing market rates for an attorney with his years of experience. *See, e.g.*, *Hollenbeck v. False River Veterinary Clinic*, No. 20-764, 2021 WL 5467021, at *3 (M.D. La. Nov. 1, 2021) ($250 per hour is reasonable rate of attorney with 8 years of legal experience), *report and recommendation adopted*, 2021 WL 5458418 (M.D. La. Nov. 22, 2021).

## 2. Hours Reasonably Expended

To arrive at the lodestar, the court multiplies the approved hourly rate by the number of hours reasonably expended on the case. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). A plaintiff seeking attorney fees has the burden of showing the reasonableness of the hours billed, including proving they exercised billing judgment. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). Accordingly, the fee applicant should submit documentation of the hours charged as well as those written off as unproductive, excessive, or redundant. *Saizan*, 448 F.3d at 799. If the court finds that the fee-seeking attorney

16

failed to exercise billing judgment, it may reduce the hours awarded by a percentage or conduct a line-by-line analysis of the time report. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Green v. Admins. of the Tulane Educ. Fund*, 284 F.3d 642 (5th Cir. 2002).

Here, Attorney Bell has submitted an exhibit/invoice indicating he expended 74.8 hours litigating on this matter between December 14, 2020 and February 21, 2022. (R. Doc. 22-11 at 3-12). Attorney Bell deducted 2.8 hours with respect to his review of a Motion to Reimburse costs,[10] and further discounted the amount sought by 20% for "inefficiencies and non-attorney work" (approximately 14.4 hours or $3,600.80). (R. Doc. 22-11 at 12). After these deductions, Plaintiff seeks to recover $14,400.00 in attorney's fees (or 57.6 hours of attorney time). (R. Doc. 22-1 at 15; R. Doc. 22-11 at 12). These deductions demonstrate an exercise of billing judgment.

Having reviewed Attorney Bell's exhibit/invoice, however, the Court will further reduce the amount sought by approximately ten percent (10%). Several of the submitted time descriptions are too vague, generalized, or cryptic to merit an award of fees for time incurred. For example, Attorney Bell has submitted time entries with the following descriptions: "Carver explore MSJ" (1 hr. 36 min.); "Carver issue whether TC is EE or not" (26 min.); "Carver what is at issue" (1 hr. 44 min.); "Carver add to notes Carla Brown who was cheated out of money" (34 min.); "Carver finding another flsa case Lafayette lady?" (57 min.); "Carver MSJ prep" (56 min. total); "Young update on discovery questions need need (sic) answers" (6 min.).

It further appears that, based on the sparse descriptions provided, several time entries should have taken a significantly shorter amount of time. For example: "Carver texted him whether he got my email" (9 min.); "Carver check mail delivery and signature" (29 min);

---

[10] It appears that this time was sought in Plaintiff's Motion for Award of Costs Relating to Defendant's Failure to Waive Formal Service of Process and Attorney Fees Relating to Preparation of Motion. (R. Doc. 18). The Court reduced the time sought from 2.8 hours to 1.6 hours at $250 per hour, awarding $400 in attorney's fees under Rule 4(d)(2). (R. Doc. 21).

"Carver change 19th JDC to LAMD suit" (1 hr. 6 min.); "Carver sending out, printing, emailing [the complaint]" (31 min.); and "Carver reminder for interrogatory response" (55 min.). The nature of these (and other) time entries make it difficult to access the actual time spent on legal work necessary for this action, including fact development, legal research, and legal writing.

Having considered the record, including the lack of any opposition by Plaintiff, the Court will reduce the attorney time sought (57.6 hours) to **51.8 hours**. The Court will set the lodestar amount at **$12,950.00** (51.8 hours at $250 per hour).

### 3. Adjustment of the Lodestar Amount

The Court has considered the *Johnson* factors, and finds no basis to increase or decrease the lodestar amount. Accordingly, the Court will award **$12,950.00** in attorney's fees in light of CATS' violations of the FLSA and LWPA.

## III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (R. Doc. 22) is **GRANTED** consistent with the body of this Order.

**IT IS FURTHER ORDERED** that an award for unpaid minimum wages under the FLSA is entered in favor of Plaintiff, Timothy L. Carver, and against Defendant, Capital Area Transit System, in the amount of **$158.89.**

**IT IS FURTHER ORDERED** that an award for liquidated damages under the FLSA is entered in favor of Plaintiff, Timothy L. Carver, and against Defendant, Capital Area Transit System, in the amount of **$158.89.**

**IT IS FURTHER ORDERED** that an award for unpaid wages under the LWPA is entered in favor of Plaintiff, Timothy L. Carver, and against Defendant, Capital Area Transit System, in the amount of **$239.30.**

**IT IS FURTHER ORDERED** that an award for penalty damages under the LWPA is entered in favor of Plaintiff, Timothy L. Carver, and against Defendant, Capital Area Transit System, in the amount of **$10,562.00.**

**IT IS FURTHER ORDERED** that an award of attorney's fees under the FLSA and LWPA is entered in favor of Plaintiff, Timothy L. Carver, and against Defendant, Capital Area Transit System, in the amount of **$12,950.00.**

Signed in Baton Rouge, Louisiana, on April 14, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**